Good morning. May it please the Court, I'm Daniel Kaplan. I represent the appellant Brandon Hullaby, and I am going to watch the clock and attempt to save three minutes from my rebuttal. All right. I'll try to help you on that as well. Thank you. Thank you, Judge. The tale that wags the dog of Brandon Hullaby's 35-year sentence is a mandatory consecutive 25-year sentence on count 3, which is a 924C weapons count. But there are fatal flaws with that count and that conviction, a number of which are in our brief. I'd like to try to focus on two. Of course, I'll address any the Court has an interest in. The two are the refusal of the judge to instruct the jury on the issue of withdrawal from the conspiracy and the constructive amendment of that charge, which took place between the indictment and the instructions and verdict form. Turning to the first of those first, it's quite well established that a defendant is entitled to have the jury instructed on his theory of the case when two things are true. Number one, it's supported by law, and number two, it has some foundation in the evidence. You are you taking the position that you still have to have the proper jury instruction submitted? I'm The defendant is required to submit a jury instruction. Yes. And in this case, the defendant requested Model Instruction 8.24, this Court's Model Instruction on Withdrawal. After some discussion and further argument, the Court refused to give that instruction. On the basis of what? There's a note in the Model Instruction book that says, do not give this if the conspiracy or only give this if the conspiracy requires an overt act. And this one? And this one does not require an overt act. So he was following our Model Jury Instruction? Yes. But the note was incorrect as applied to this case. Because? I'm sorry. Because we're not arguing that the conspiracy count, count 1, is flawed or is affected by the refusal to give this instruction. We're arguing that count 3, the weapons count, which is a matter of Pinkerton vicarious liability through the conspiracy, is affected by the refusal to give this count. I have two questions or two problems. I understand your argument. But the first problem was one part of the correct application of that withdrawal is the communication to the co-conspirators. So I reviewed the videotape, and he did walk, your client walked off the videotape and walked off the surveillance camera. But what evidence, since the burden was on your client, what evidence, however small, was raised to show there was communication with the co-conspirators? Well, our position is that a jury could have found, the jury could have found with the proper instruction, that that walking away under those circumstances was effectively communicating to the co-conspirators. Remember, the circumstances are, they are getting into this SUV, about to engage, about to go to that stash house and bust in and steal the drugs. At that very moment, when they get in, he then walks away. When he's supposed to be the leader of that entry team that's going to bust into the house, at that very moment, he's supposed to be coordinating them and leading this charge, and it's about to happen. That's the moment when he walks away from everything. But there's no evidence to all the way he walked away. There's no evidence why he walked away. The jury, the jury could have inferred that he walked away because he decided he was not going to have any part in this and that one way to make that clear to everybody was how could it be clearer than simply walking completely away when they're all getting in and ready to go. Well, you see. The question I have on that is, as far as the gun aspect of the conspiracy, it seems to me that, in fact, that had already was over at that point. They had had these discussions before. They'd showed up, this bag of guns that Mr. Brown moved. It was opened up. People sort of saw some stuff in there. So my question would be, what's he walking away from at that point, given the way that the statute is worded? Isn't it over and, for lack of a better word, his goose is already cooked by that point? Certainly, the jury could have made that conclusion. Even with an instruction, the jury certainly could have come to that conclusion and we would be in no position to say there's insufficient evidence to support it. I'll concede that. But I believe the jury also could have alternatively concluded that there wasn't any 924C offense committed before he walked away. Now let me just stop you for a moment because I have the same problem that Judge McKeown is expressing. After the point where he walks off camera, within seconds the police come and arrest everyone. So nothing happened after the time that he walked off camera other than the arrest. So either the elements of the 924C offense were completed before that happened or and so we're in sort of Rule 29 land, did the jury have enough evidence to convict or not, because nothing happened after. How do we get around that? Well, it's the very moment when they're getting into that SUV that he's walking away. So it might have been, a jury might have concluded, well, maybe when they get into the truck and perhaps they could infer that there were weapons in the back that were going to be used, maybe they could be said to be possessing in furtherance of an attempt at that point. But that's the very point when he walks away. So it's a very fine, I'll grant you it's a very fine dividing up the time, but a jury could have concluded that that same moment where there actually is finally a 924C is the very moment when he walks away. And I would also stress the jury did not find that an attempt occurred. So your argument is that they were getting into the car and he was getting away. I looked at the video. I didn't see anybody opening a door and getting in. Did I miss something? Mr. Hullaby walks over to the SUV. This is the SUV they were going to use to go to the stash house. Yes. He opens the door. The others get in. He walks away. All of them got in? Not everyone got in, but the ones who were going to be going to the stash house and doing the entry got in. How do we know that? Well, that's suggested by the discussions that happened leading up to it. Right. But what we know is that there's a bunch of guys milling around, so to speak, in this lot. And I think we've all watched the video several times to try to get the orange hat and that sort of thing. They're milling around. One gentleman steps away. He makes the phone call, the, you know, come on in phone call. And then some people get in the car. We don't see precisely. And then we see him over here. And then that's really the end because the arrest takes place. So that scenario kind of takes me back to the question I first asked that Judge Akuta also followed up on, and that is, wasn't there before they actually got in the car, hadn't the 924C claim and charge actually been affected? Again, I will concede that a jury could have found that it had. I still maintain the jury could have found that it hadn't. And here's what happened before he walks away. You know, there was one conspirator, Julian Mendoza, had a handgun. He threw it away when the police rushed in. There's no evidence at all that suggests that that was possessed in furtherance of this offense. For all we know, he had it on his person every day of his life. It would simply be speculation. A jury might not have found that that was in furtherance. Then there's the bag, which had shotguns and another pistol. Now, the bag was transported earlier in the day in connection with this, but it was transported by a government agent, Pablo Cortina. That's not part of the conspiracy. Then there is the treatment of the bag of guns by Charles Brown right before. So the question is, Charles Brown carries the bag from Cortina's car to the SUV. He opens it, and he's rummaging around in it. Now, the question is, did the jury have to find? Could the jury have found that even at that point it was not possession in furtherance? The answer is yes, because there are two other counts that the 924C could attach to, that this possession could be in furtherance of. But one of them really isn't. There's count one is the conspiracy. But certainly the jury could conclude, and I don't know how they could fail to conclude, that the weapons did not further the act of conspiring. But your argument has to turn on, because the jury did, in fact, find the in furtherance, it has to turn on that something happened after your client walked away that would have changed the jury's mind. And so your argument has to turn on people got in the car, people shut the door, because that's all that happened, right? Well, my argument, first of all, I would say that it's recognized in the law that the jury can return completely inconsistent verdicts. That's not considered to be a flaw. That's a presumption of how juries operate. That's why I'm not arguing that the 924C is invalid because they hung on the attempt. And there's no way to attach the 924C to the act of conspiring. So that's the first thing I would say. They could simply be inconsistent, and that's accepted in our system. But the second thing I would say is the jury could find that if the jury really wanted to find in respect to this count that there was an attempt, and that's what this possession attached to, they might have found the attempt for that count didn't happen until the same moment that Brandon walked away. Okay. So that's really the crux of your argument, that the jury, that, but for the instruction, the lack of an instruction, the jury could reasonably have determined that there was no furtherance because he walked away at the moment of people getting into the car? Is that the key event that makes a difference? Yes. I believe the jury, that's the jury, could have found that. It would have been a reasonable judgment. It would have been a reasonable conclusion within their prerogative. And with the instruction, they might have done that. Do you have anything that you can point us to on this issue of withdrawal? Because when you read through the cases that I've looked at, and of course, there's probably way more available, they really talk about some affirmative act and communication of that act. So that's where I'm wondering. We don't see him chit-chatting with them, which could be inferred, okay, I'm out of here. I mean, he was the one that said, I'm going to bring a big-ass chopper to the event, right, which I guess means rifle or shotgun or whatever. So where is the communication that we look to? Again, I believe the jury could reasonably have concluded that walking away under those circumstances was communication and very effective. How could you communicate more effectively than to literally walk away from the very at the very moment when you're supposed to be leading things that you turn and walk away? And you feel you have a jury instruction that they had before them at that time that they could apply? I feel that if the jury had the withdrawal instruction that they might have reached that conclusion. But they didn't? They didn't have that. And was one requested? It was, yes, in a pretrial filing, and there was argument over it, and it was denied. And the judge decided? Not to give the withdrawal instruction. I'd like to reserve the balance of my time. All right. Thank you, and may it please the court. My name is Dominic Lanza. I represent the United States. This case involves a defendant who was still on supervised release for his past drug-related armed robbery when he tried to commit this drug-related armed robbery. The evidence of the defendant's guilt was overwhelming and largely beyond dispute because it was all caught on tape. The defendant attended two different meetings on November 2nd and again on November 3rd, where he boasted about his prior experience conducting these sorts of home invasions, talked with great enthusiasm and guards in the stash house while wearing a ballistic vest, went again in great detail about how he knew how to repackage all the stolen cocaine and sell it outside Arizona to make sure that he never was caught. And tellingly, the final words he spoke before he was arrested were to confirm we're a team. This court has recently affirmed the convictions arising from several other I want to start right in on the withdrawal issue that the Court already addressed with Mr. Kaplan. We've identified three independent reasons why this Court should affirm on this ground. First, the timing issue. Second, the fact that even resolving all inferences in the defendant's favor, this simply didn't constitute withdrawal as a matter of law. And third, because the other jury instructions adequately allowed the defendant to pursue a withdrawal defense, even though his particular instruction was withdrawn. And I think the cleanest and most straightforward ground to affirm on is the timing issue, so I want to spend some time talking about that. Exhibit 37 speaks for itself. Sounds like the Court has reviewed the tape several times. The defendant's walk away occurred at 4.27 and 15 seconds. And it took the last 17 seconds of the tape before he was arrested. Now, under the law of withdrawal, the only way that withdrawal could have even been a potentially applicable defense here is, as the Court has rightly honed in on, if the defendant's co-conspirators didn't begin possessing the guns until after 4.27.15. Because withdrawal, of course, doesn't absolve a defendant of liability for previously committed crimes. So there's two sets of guns that were possessed during this conspiracy. One of them was with Mr. Mendoza. Here, it is beyond dispute that Mr. Mendoza possessed this firearm in furtherance of the conspiracy way before 4.27.15. In fact, Mr. Mendoza had this semi-automatic gun on him when he arrived at the pre-planning meeting on November 3rd. Stayed with the agents the whole time as he drove in the car with the undercover agents to the final staging area and had it on him the entire time until he flung it away when he was running away. The opposing counsel suggests that perhaps this is just part of his daily armament and it's not in furtherance of this particular transaction. I'd say that founders on the record in this case where Mr. Mendoza was one of the attendees at the November 2nd meeting where he, Mr. Holoby, and Mr. Brown, again, went in great detail about how they were going to be armed and bring all their gear and guns and choppers the next day to make sure that they had sufficient firearms to incapacitate the guards in this room. So, that's Mr. Mendoza, that's one gun. The other set of guns are the three firearms that were in the bag in the back of the SUV. And again, what's the undisputed evidence of when these guns were possessed? They were brought to the staging area and then the court will see on Exhibit 37, Mr. Brown grabs the bag of guns at 425 and 27 seconds, transfers it from one car to the other. While he's doing that, he opens it up, rifles around, handling all the guns to the point that Agent Kozlowski, who's undercover, wants to go over and see what he's doing because he's so concerned that guns are actively being handled in the middle of this undercover operation. And then Mr. Brown stops possessing the guns and walks away from the bag at 42609, which again is a minute before the purported walk-away attempt. So, the two times that guns were actively handled in this case, both undisputed, Exhibit 37 speaks for itself, happened well before the walk-away attempt. So, that's one, timing. Second independent reason why this court can affirm is as the- Let me ask you if there were audio on that tape that as he walked away, he said, guys, I'm done, I'm not doing this anymore, I'm not participating, would your answer be the same? My answer would be the same that the court should affirm on this record for reasons one and three, the timing of it and the fact that the other instructions adequately allowed him to pursue the defense. I think if you had a case where defendants, well, actually, the court obviously didn't reach that. I think- I'm asking you whether, if that were the testimony and you could hear that on the audio- I think- Are you taking the position that it would be an ineffective withdrawal because guns had already been displayed? Yes. What's the basis for that? Because the guns would have already been possessed in furtherance of this crime. There needs to be some evidence that the possession began after the withdrawal attempt. And so here, because of the timing and the hypothetical the court just laid out, there's no possession in that final 17 seconds. And so this is a defense that just doesn't apply to the facts. And we've cited several cases in which withdrawal attempts occurred after the crime had been committed. And time and again, courts have affirmed the denial of the withdrawal instruction under those facts. The Loya case from this circuit, the Navarro case, and I think it's telling even the defendant's best case on withdrawal, the Andrus case from the Seventh Circuit. In that case, even though the Seventh Circuit said, well, under these facts, the defendant probably did withdraw, the court went on to affirm the conviction because even there it said, well, the withdrawal happened after the crimes were committed. So this is really a tempest in a teapot. It doesn't matter. So timing is the first issue. On the second issue, the sufficiency of whether this actually constituted a withdrawal attempt. I've read all the cases cited in the parties' briefs. I've yet to see a case where silently walking away from one's co-conspirators is considered withdrawal under the law of conspiracy. And I think some of the quotations from the cases we've cited are telling that silently walking away doesn't count. The Seventh Circuit. Counsel indicated that at least it's arguable that the jury could find, because he turned his back at that particular time and walked away, that that is sufficient evidence. What's your response? I think the Seventh Circuit said it best. You do not absolve yourself of guilt of bombing by walking away from the ticking bomb. That's what happened here. Turning your back and walking away is not withdrawal. That is not the positive, decisive step that this court has said is needed to constitute withdrawal. Again, these cases, time and again, passive non-participation is not enough, the Supreme Court recently held. And again, going back to this Loya case, the Ninth Circuit case, that was a case where the defendant not only left the state, it was an Arizona alien smuggling ring, he said, I don't want to do it. He internally decided, I don't want to do it anymore. He left Arizona and went to Idaho. And there was evidence that before he did that, he told one of his co-conspirators, I'd prefer to not go along with this particular overt act, and he didn't cash a check that they had given him. Even under those circumstances, this Court affirmed the denial of a withdrawal instruction, because it said that conduct in Loya wasn't even enough to warrant a withdrawal instruction. And here, this is a far cry from what occurred at Loya. Finally, the third independent ground on why the timing, putting aside the timing and the factual absence of withdrawal, this Court should affirm. Judge Wallace noted that the district court was troubled by the proposed instructions in this case, because the first count, the conspiracy count, was one of these Title 21 conspiracies that doesn't have an overt act. And the court could have been concerned that if you gave the standard withdrawal instruction that talks about when withdrawal occurs in the context where count one didn't have an overt act requirement, and withdrawal isn't an applicable concept, it could have been confusing to the jury. So the court allowed Mr. Holoby to pursue a withdrawal defense, and the standard Pinkerton instruction said, you are only liable for the crimes of your co-conspirators if those crimes are committed at the time you're a member of the conspiracy. Well, I – with all respect, that's pretty oblique. It – what it says is the defendant was a member of the same conspiracy at the time. I think you have to be kind of a legal jumpstart to translate that into saying, if you withdraw from the conspiracy, then we're not going to get you under the Pinkerton instruction. So I'm concerned about why the judge didn't permit him his modified instruction, or at least some form. Because he proposed not only a modification of the model instruction, which I agree poses some issues because of the lack of necessity of an overt act, but he also proposed some modification of the Pinkerton instruction. And why – if you're looking at it simply on the basis of the instructions, why wasn't that an error? It wasn't an error because for all the foregoing reasons on the timing and the actual act that occurred here, there was not withdrawal as a matter of law, even resolving all inferences in the defendant's favor. This is just like Loya. It's just like Navarro. These cases where courts have said, if – just like duress defense has happened sometimes in cases to a defendant and wants to put on a duress defense, courts are entitled to say, you know, if there's not evidence of this defense, I'm not required to give an instruction on it. The defendant may want it, but if it's not factually warranted, I'm certainly not required to do it, and it's not reversible error. And I – and as I read the transcript, there was no restraint put on his counsel in terms of arguing withdrawal. Correct. And we've – in one of the footnotes in our brief, we've cited several different instances where he argued this at length. So I think that covers it from our perspective on the withdrawal instruction. I'd be happy to address any other questions about the remaining issues in the defendant's brief, and if there are none, thank you very much. Thank you. Do we have some rebuttal time? There's a very fundamental difference between this case and Loya and Navarro and cases like Loya and Navarro. The fundamental difference is, in those cases, the defendant was challenging the underlying charge of conspiracy. Now, we are not challenging the conviction on count one with respect to this instruction. We're challenging the Pinkerton liability for count three. In Loya and Navarro, the court said, if you withdraw after you're already at the meeting of the minds and you're already guilty of conspiracy, it doesn't even matter. So even legally, the instruction wasn't supported in those cases. In these cases, the government has never disputed that this instruction was supported by law. So those cases have no application here. What we are really hearing from the government in this argument, as in the briefs, is jury argument. The government has made an effective, compelling, rational argument that if you all were sitting as the jury in this case, you shouldn't find Mr. Hullaby guilty and you should find Mr. Hullaby guilty on count three. Mr. Peston, the trial lawyer, can make a very compelling argument that you should. The problem is, without the instruction, even though the trial lawyer was able to argue withdrawal, as this Court observed in the Escobar v. Wright decision, which is cited in the briefs, permitting a defendant to offer defense is of little value. If the jury is not informed of the defense, if it is believed or if it helps create a reasonable doubt, then the jury's mind will entitle the defendant to a judgment of acquittal. So the reason for instructions like this is that, as the Court also said in Escobar, the jury is not free to conjure up the law for themselves. The fact that the trial lawyer got to argue it doesn't cure the flaw in not giving them the legal tools to apply that concept of withdrawal to the guilt of count three. Now, the government has referred to the gun held by Mr. Mendoza. Well, the evidence is clear that Mendoza was not going to be entering the house. He was supposed to be a lookout. So it doesn't at all refute the notion that he may well have just carried the gun with him every day. So there's certainly a jury could have found that that was not possessed in furtherance of this offense. The government has also argued that the possession happened before Mr. Hullaby walked away. Well, a jury might have found that there was possession, or they might not have. The jury might have found that there was possession, but it wasn't in furtherance. You have to ask yourself, this is a jury that refused to reach a verdict of guilt on the attempt count. So if there – even if there's possession going on when Brown is rummaging in the bag, the question is, couldn't a jury have concluded that the possession was not in furtherance of count one because the conspiracy had already happened, the meeting of the minds was over, and the conspiracy was not in furtherance of an attempt because an attempt wasn't even done in their minds by the end of everything. They didn't reach a guilty verdict. So, again, the basic point is, these are decisions the jury should have been given the tools to make. They could have done that in Mr. Hullaby's favor, and they should have that opportunity on retrial. Thank you. I'd like to thank both counsel for your arguments this morning and for coming from the standpoint that the United States v. Hullaby is submitted.
judges: Wallace, McKeown, Ikuta